RESERVE LIFE INSURANCE COMPANY, Plaintiff-Appellant,†

v.

Bronson LA FOLLETTE, as Attorney General, and Harold R. Wilde, as Insurance Commissioner, State of Wisconsin, Defendants-Respondents,

WISCONSIN CHIROPRACTIC ASSOCIATION, a Wisconsin non-profit, non-stock corporation, and Sigurd C. Syverud, Intervenors-Defendants-Respondents.

Court of Appeals

*No. 81–1467. Submitted on briefs March 2, 1982.—
Decided July 27, 1982.*
(Also reported in 323 N.W.2d 173.)

† Petition to review denied. BEILFUSS, C.J., took no part.

638

For the plaintiff-appellant the cause was submitted on the briefs of *Conrad H. Johnson* and *Schlotthauer & Johnson,* of Madison.

For the defendants-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Robert D. Repasky,* assistant attorney general.

For the intervenor-defendant-respondent Wisconsin Chiropractic Association the cause was submitted on the brief of *Robert Horowitz* and *Gary M. Young* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the intervenor-defendant-respondent Sigurd C. Syverud the cause was submitted on the brief of *Eugene*

O. *Gehl* and *Barbara J. Swan* and *Brynelson, Herrick, Gehl & Bucaida* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. The ultimate issue before us is whether sec. 207.04(1)(m), Stats. 1973, unconstitutionally impairs health insurance policies issued by appellant Reserve Life Insurance Company. Our analysis of the secondary issues differs from the trial court's. We nevertheless agree that an unconstitutional impairment has not occurred. We therefore affirm the judgment dismissing the complaint.

Section 207.04(1)(m), Stats. 1973, provides that the following is an unfair method of competition and an unfair or deceptive act or practice:

Refusing to offer inclusion of coverage for services of chiropractors or physicians lawfully rendered in this state when writing a policy providing accident and health benefits for treatment encompassing such services, if the policy provides payment for services performed by a physician or chiropractor, all at the option of the assured . . . .

Section 207.04(1)(m), Stats. 1973, is applicable to all policies issued or renewed after June 16, 1974. Sec. 2, ch. 269, Laws of 1973. That date has been carried forward in subsequent versions of the statute.[1] Section 628.33, Stats. 1979–80, provides in material part:

[It is unfair] to refuse, with respect to all insurance policies issued or renewed after June 16, 1974, to offer inclusion of coverage for services of chiropractors or physicians . . . when writing a policy providing acci-

---

[1] Section 207.04(1)(m), Stats. 1973, was created by ch 269, Laws of 1973 and amended by sec 10, ch 223, Laws of 1975, effective May 5, 1976. It was repealed and recreated as sec 207.04, Stats 1975, by sec 25, ch 371, Laws of 1975, and renumbered as sec 628.33, Stats. Sec 21, ch 339, Laws of 1977.

dent and health benefits for treatment encompassing such services, if the policy provides payment for services performed by such a physician or chiropractor, all at the option of the assured . . . .

Certain uncontroverted facts have been established by motions of the parties for summary judgment. Reserve's health policies have a guaranteed renewable clause.[2] After June 16, 1974 Reserve renewed over 800 policies it had issued in Wisconsin. It renewed the policies without offering coverage for services of chiropractors, even though its policies provided payment for services performed by a doctor of medicine or osteopathy. Reserve

[2] The pertinent policy provisions are as follows:

Part eight provides in relevant part:

Upon the timely payment of premiums, the Company shall not have the right to cancel this policy or to place any restrictive rider hereon with respect to any coverage under this policy . . . .

. . . .

The Insured shall have the right and option to continue this policy in force, subject to all provisions, conditions and limitations herein contained, for successive consecutive terms each of one, three, six or twelve month intervals by the payment as specified in Additional Provision 2, of premiums at the Company's applicable table of rates in effect on the respective due dates of such premiums . . . . The Company reserves the right to change, at any time and from time to time, the table of premium rates applicable to premiums thereafter becoming due for all policies of this Form GR–501–A then in force on insureds who are residing in the same state as the Insured on the effective date of such change. . . .

Additional Provision 2 provides in relevant part: "Each time this policy is renewed in accordance with Part 8 of the policy, the renewal term begins at the same time the preceding term ends and ends at 12 o'clock noon, the same Standard Time, on the last day of such renewal term."

Paragraph thirteen of the general provisions provides, "CONFORMITY WITH STATE STATUTES: Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such statutes."

subsequently brought this action for judgment declaring sec. 207.04(1)(m), Stats. 1973, unconstitutional as applied to its policies issued in Wisconsin before June 16, 1974. Reserve relies on the contract clauses of the United States Constitution and of the Wisconsin Constitution.[3]

Before reviewing the constitutional matters, we examine the contention that this action is moot.[4] Respondents assert that no claims exist against Reserve for chiropractic services based on Reserve's policies issued before the effective date of sec. 207.04(1)(m), Stats. 1973. A case is moot "when a determination is sought upon some matter which, when rendered, cannot have any practical legal effect upon a then existing controversy." *Milwaukee Police Asso. v. Milwaukee,* 92 Wis. 2d 175, 183, 285 N.W.2d 133, 137 (1979). As a general rule, moot issues will not be considered. *Milwaukee Professional Firefighters Local 215 v. Milwaukee,* 78 Wis. 2d 1, 15, 253 N.W.2d 481, 488 (1977). We conclude this action may be maintained whether or not claims are outstanding.

Potential defendants may test the constitutional validity of a statute by an action for declaratory judgment. *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 674, 239 N.W.2d 313, 325 (1976). The insurance commissioner is charged by sec. 601.41(1), Stats., with a duty to enforce chs. 600 to 646, Stats. Section 628.33, Stats. 1979–80, is the successor to sec. 207.04(1)(m), Stats. 1973. The commissioner is empowered to commence an action

---

[3] The complaint also claimed violation of the due process clause of the fourteenth amendment and art. I, sec. 1 of the Wisconsin Constitution. Those grounds are not argued on appeal.

[4] We reject Reserve's contention that mootness must be raised by the respondents on cross appeal. As a matter of judicial economy, we will decline to proceed further as soon as mootness is shown, regardless when or how it is shown.

for forfeitures against an insurer who fails to comply with orders issued under sec. 601.41(4). Sec. 601.64(2) and (3). Reserve need not wait for the commissioner to proceed against it before seeking declaratory relief. *Borden Co. v. McDowell*, 8 Wis. 2d 246, 255–56, 99 N.W. 2d 146, 152 (1959). *Compare Loy v. Bunderson*, 107 Wis. 2d 400, 415, 320 N.W.2d 175, 184 (1982) (declaratory judgment available to settle existing or incipient controversy).

In any event, exceptions exist as to the general rule on mootness, one of which is that the constitutionality of a statute will be decided in an action in which the other issues have become moot. *Milwaukee Professional Firefighters*, 78 Wis. 2d at 15, 253 N.W.2d at 488; *Doering v. Swoboda*, 214 Wis. 481, 488, 253 N.W. 657, 659 (1934). The constitutionality of this statute has not previously been considered. We proceed to the merits of the constitutional issue.

The contract clause of the federal constitution, art. I, sec. 10, clause 1, provides that no state shall pass any "law impairing the obligation of contracts." Article I, sec. 12 of the Wisconsin Constitution prohibits the passage of "any law impairing the obligation of contracts."

A successful challenge to state action on grounds that it has impaired the obligation of a contract must meet the following criteria: the legislation must impair an existing contractual relationship; the impairment must be substantial; and if the impairment is substantial, the purpose of the state legislation must be examined to determine whether the impairment is justified. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244–45 (1978). The burden is on Reserve to show beyond a reasonable doubt that the challenged statute is unconstitutional. *Wis. Bingo Supply & Equipment Co. v. Bingo*

*Control Bd.,* 88 Wis. 2d 293, 301, 276 N.W.2d 716, 719 (1979).

If the post-June 16, 1974 renewals resulted in continuation of Reserve's policies, rather than new or independent contracts, then Reserve has satisfied half of the first *Allied Structural Steel* criterion for an unconstitutional impairment: that sec. 207.04(1)(m), Stats. 1973, applies to existing contractual relationships.

"Whether the renewal of a policy constitutes a new and independent contract or continuation of the original contract primarily depends upon the intention of the parties as ascertained from the instrument itself." 17 *Couch on Insurance* 2d sec. 68.39 at 681 (1967) (footnotes omitted). When construing an insurance contract to give effect to the intentions of the parties, an objective test is applied. *Bertler v. Employers Insurance of Wausau,* 86 Wis. 2d 13, 17, 271 N.W.2d 603, 605 (1978). The objective test is described in *Cieslewicz v. Mutual Service Casualty Ins. Co.,* 84 Wis. 2d 91, 97–98, 267 N.W.2d 595, 598 (1978), as follows:

[A]n insurance policy should be construed as it would be understood by a reasonable person in the position of the insured. *Garriguenc v. Love,* 67 Wis. 2d 130, [134–35], 226 N.W.2d 414, [417] (1975). The language of the policy is to be given the common and ordinary meaning it would have in the mind of a lay person. *Lawver v. Bolling,* 71 Wis. 2d 408, [414], 238 N.W.2d 514, [517] (1976). . . .

Construction of a contract is ordinarily a question of law. *Schlosser v. Allis-Chalmers Corp.,* 86 Wis. 2d 226, 244, 271 N.W.2d 879, 887 (1978). Unless a contract is ambiguous, requiring reference to extrinsic facts, its construction is solely a question of law. *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979); *RTE Corp. v. Maryland Casualty Co.,* 74 Wis. 2d 614, 621, 247

N.W.2d 171, 175 (1976). Because neither party offered extrinsic facts to aid the trial court in its construction of the policy provisions, a question of law is presented which may be redetermined independently by this court on appeal. *Id.*

The parties have provided numerous decisions by appellate courts in other states. We base our conclusion on the policy provisions before us. Accordingly, we need not review the welter of decisions from other jurisdictions determining whether renewals under other circumstances resulted in new insurance contracts.

We conclude that renewal of each health policy results in a continuation rather than a new and independent contract. This conclusion follows from the policy provision that the insured "shall have the right and option to *continue* this policy in force, subject to all provisions, conditions and limitations herein contained . . . by the [premium] payment . . . ." (Emphasis added.) The common and ordinary meaning of "continuous" allows no other conclusion.

The trial court took a different approach. Taking the view that, regardless whether renewal of a policy constitutes a new contract for all purposes, the court concluded that renewal should constitute a new contract for the purpose of incorporating new statutes. The court found a new contract particularly appropriate because the original policy was expressly made subject to existing statutory provisions. The court found support for its holding in Illinois decisions, citing *Dickirson v. Pacific Mutual Life Ins. Co.*, 150 N.E. 256 (Ill. 1926) ; *Thieme v. Union Labor Life Ins. Co.*, 138 N.E.2d 857 (Ill. App. 1956).

According to the *Thieme* court, Illinois precedents have established "that a contract of annually renewable in-

surance forms a new contract at each renewal for the purpose of incorporating into the contract the statutory provisions enacted after the creation of the original contract relationship." 138 N.E.2d at 860. No reported Wisconsin case has adopted that view where, as here, the insured has the express right to "continue" the policy.

We reject the *Thieme* court's statement of the law as applied to the facts before us. We ought not substitute a rule of law for the known intention of the parties expressed in their contract. If applied where the parties intended renewal to constitute a continuation, the Illinois rule will invariably deprive the parties of the benefit of the contracts clause. If the parties intended renewal to constitute a new contract, the Illinois rule is unnecessary.

It is immaterial, for purposes of our analysis, that Reserve's policy provides, "Any provision of this policy which, on its effective date, is in conflict wth the statutes of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such statutes." The effective date is the date of the original policy. No policy provision incorporates statutory provisions enacted after the effective date.

We turn to the second half of the first *Allied Structural Steel* criterion: whether the statute impairs Reserve's continued contracts. The trial court held that no impairment has occurred. It reached this conclusion because sec. 207.04 (1) (m), Stats. 1973, merely requires the insurer to offer chiropractic coverage for which it may charge an additional premium commensurate with the new risk, and the insured is free to accept or reject the offer. The court concluded that any alteration of the contract results from the actions of the parties and not from the statute.

The facts being undisputed, whether the obligation of contract has been impaired is a question of law. *North-*

*ern Pacific Railway Co. v. Minnesota ex rel. Duluth,* 208 U.S. 583, 590 (1908).

To support its conclusion that a statutorily required offer to cover chiropractic services does not impair Reserve's policies, the trial court cited *Insurers' Action Council, Inc. v. Markman,* 490 F. Supp. 921 (D. Minn. 1980), *aff'd,* 653 F.2d 344 (8th Cir 1981). The appeal of that decision was unavailable when the trial court rendered its opinion. Affirming *Insurers' Action Council,* the court of appeals said that under the legislation attacked on impairment grounds "the insurer can continue to *renew* existing policies *without* offering" the additional coverage required by the act. 653 F.2d at 346 (emphasis in original).[5]

Accordingly, no cited precedent supports the conclusion that because the statute requires Reserve only to offer chiropractic coverage, its policies are unimpaired by sec. 207.04(1)(m), Stats. 1973. We reach a contrary conclusion.

State legislation impairs a contract by imposing an obligation upon a party beyond the obligations the party had agreed to undertake. *Allied Structural Steel,* 438 U.S. at 240. Compelling Reserve to offer additional coverage under its existing policy comes within the *Allied Structural Steel* holding. Reserve's policy grants no option to the insured to elect or accept additional coverage. Forcing Reserve to grant that option compels it to undertake an obligation beyond that to which it had

---

[5] The court of appeals concurred with the district court's holding that merely requiring an offer of new coverage for which an insurer may charge an extra premium was not an "unconstitutional impairment." *Insurers' Action Council, Inc. v. Markman,* 653 F2d 344, 346 (8th Cir 1981). That holding pertains to the substantiality of an impairment rather than the existence of an impairment.

agreed by contract. To conclude that any alteration of the insurance contract results from the actions of two parties is a half-truth if one party is compelled by law to offer the modification. That Reserve may charge a premium for the additional coverage does not prevent impairment. The prior relationship between the parties has been altered by requiring the insurer to make the offer, regardless whether the insurer may charge a higher rate.

Consequently, we conclude that sec. 207.04(1)(m), Stats. 1973, impairs Reserve's existing contractual relationship arising out of policies renewed after June 16, 1974. We turn to the second *Allied Structural Steel* criterion for a successful challenge based on the contracts clause: that the impairment is substantial.

Rather than produce or claim the existence of facts showing the effect of the impairment, Reserve asserts that the new statutory obligation itself amounts to a substantial impairment. Reserve ignores the factual element in the second step of impairment analysis in *Allied Structural Steel*. It is an undisputed and compensating fact that Reserve may increase its premiums to meet the cost of the additional coverage it must offer. Reserve cites *Health Ins. Ass'n of America v. Harnett*, 376 N.E.2d 1280 (N.Y. 1978), as authority for its contention that the option of the insurer to increase the premiums is not sufficient to escape an unconstitutional impairment. *Health Ins. Ass'n* was decided before *Allied Structural Steel* and does not discuss the substantiality issue. The impairment analysis in *Health Ins. Ass'n* is therefore not persuasive.

Because the facts relied on by the parties to support their respective motions for summary judgment are uncontroverted, and Reserve has not established that the

impairment to its continued policies is substantial, the trial court properly entered judgment dismissing the complaint. Summary judgment is appropriate where no factual dispute exists, no competing inferences arise from undisputed facts and the law supports the judgment. *Tomlin v. State Farm Mutual Auto Ins. Co.*, 95 Wis. 2d 215, 218, 290 N.W.2d 285, 287 (1980).

*By the Court.*—Judgment affirmed.