Kevin GIFFIN and Sally Giffin, Plaintiffs-
Respondents,

v.

Gary POETZL and Maney-Miller Inspectors, LLP,
Defendants-Respondents,

ECONOMY CEMENT, MASONRY, INC. and MDM Enter-
prises, Inc., Defendants,

TOWN OF VERNON, Defendant-Appellant.

Court of Appeals

*No. 00–2633. Submitted on briefs July 18, 2001.—Decided
August 29, 2001.*

2001 WI App 207

(Also reported in 634 N.W.2d 901.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles H. Bohl* and *Andrew A. Jones* of *Whyte Hirschboeck Dudek, S.C.*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Thomas E. Aul* of *Law Offices of Thomas E. Aul*, Delafield.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J. The Town of Vernon (Town) appeals from a nonfinal order of the circuit

court denying its summary judgment motion asserting that Gary Poetzl (Poetzl) and Maney Miller Inspectors, LLP (Maney-Miller) (also defendants below) are independent contractors of the Town, and that therefore Kevin and Sally Giffin (Giffins) (plaintiffs below) are precluded from recovering from the Town for the alleged negligence of Poetzl and Maney-Miller. Because we agree with the Town that Poetzl and Maney-Miller are independent contractors pursuant to WIS. STAT. § 101.65(2) (1999–2000),[1] we reverse.

### Facts

¶ 2. The Town contracted with Maney-Miller (Poetzl is a partner in Maney-Miller) to perform building inspections for the Town. The Giffins applied for and received a building permit for the construction of a single-family residence. The Giffins then entered into a contract with Stengel Builders (Stengel) in early 1996 to build their home. In the fall of 1996, after about six months of construction, the Giffins decided to terminate their contract with Stengel because of several problems with the construction.

¶ 3. The Giffins arbitrated their claims against Stengel in January 1998. The arbitration resulted in an award that excused the Giffins' responsibility for the $57,682 final payment on the home and from responsibility for any unpaid bills or invoices incurred by Stengel relating to construction of the home. The arbitrators also awarded the Giffins $3500.

¶ 4. The Giffins then filed a lawsuit against the Town, Poetzl and Maney-Miller, among others, alleging

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

that the construction defects violated the Town's building code. With respect to the Town, the Giffins further alleged that Poetzl and Maney-Miller negligently provided building inspection services to them on behalf of the Town. Specifically, the Giffins alleged that Poetzl failed to uncover or identify the alleged construction defects caused by Stengel and the various subcontractors.

¶ 5. On September 15, 2000, the circuit court denied motions for summary judgment filed by the Town, Poetzl, and Maney-Miller. On September 29, 2000, the Town filed a petition with this court pursuant to Wis. Stat. §§ 808.03(2) and 809.50(1) seeking leave to appeal the nonfinal order of the circuit court denying its motion for summary judgment. On November 8, 2000, we granted the petition of the Town.

## Standard of Review

¶ 6. We review decisions on summary judgment de novo. *U.S. Fid. & Guar. Co. v. Goldblatt Bros.*, 142 Wis. 2d 187, 190, 417 N.W.2d 417 (Ct. App. 1987). Summary judgment is governed by Wis. Stat. § 802.08. Its purpose is to determine whether a dispute can be resolved without a trial. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 115, 334 N.W.2d 580 (Ct. App. 1983). An appellate court as well as the trial court must follow summary judgment methodology. *Id.* at 115–16. Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. *Id.* at 116. If the complaint states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to

determine whether that party has made a prima facie case for summary judgment. *Id.* To make a prima facie case for summary judgment, a moving defendant must show a defense that would defeat the claim. *Id.* If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or whether reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary. *Id.*

¶ 7. This case involves the interpretation of WIS. STAT. § 101.65. Statutory interpretation and the application of a statute are questions of law that we review independently of the circuit court. *State v. Schmitt,* 145 Wis. 2d 724, 729–30, 429 N.W.2d 518 (Ct. App. 1988).

### Relevant Statute

¶ 8. WISCONSIN STAT. § 101.65 states, in part, that a town:

*(1) May:*

*(a) Exercise jurisdiction over the construction and inspection of new dwellings* by passage of ordinances, provided such ordinances meet the requirements of the one- and 2–family dwelling code adopted in accordance with this subchapter. . . .

. . . .

(2) Shall contract with the department for those inspection services which the municipality does not perform *or contract for* . . . and reimburse the department for its reasonable and necessary expenses incurred in the performance of such services. . . . (Emphasis added.)

## Analysis

¶ 9. On appeal, we decide two issues. First, we hold that under WIS. STAT. § 101.65, the Town is allowed to contract out for building inspection services. Second, we hold that the Town did contract out for building inspection services to Maney-Miller and Poetzl, who thus performed as independent contractors for the Town.

¶ 10. The circuit court addressed the Giffins' claim of negligence against the Town based on the alleged failure of Maney-Miller and Poetzl to uncover purported violations of the Uniform Dwelling Code by Stengel and various subcontractors in the construction of their home. In deciding this claim, the circuit court noted that the weighing of all the factors involved "would be difficult were it not for the clear language of the legislature" found in WIS. STAT. ch. 101. We agree that the language in ch. 101 is clear, but that clarity was partially lost on the circuit court. While the court correctly recognized that ch. 101 imposes a nondiscretionary duty upon municipalities to ensure that building inspections occur, it incorrectly concluded that ch. 101 prohibits a municipality from contracting out for building inspection services and thus, incorrectly deducted that an inspector performing such services for the Town functions as a Town employee and not as an independent contractor.

¶ 11. WISCONSIN STAT. ch. 101 does require a municipality, such as the Town, to ensure that building inspection takes place, but it contemplates a municipality doing so in one of several ways. The language of ch. 101 unambiguously gives the Town discretion to exercise jurisdiction over the construction of residences and,

if it chooses to do so, the Town may either pay the State to perform the inspections, perform the inspections itself or contract for the inspections. Wis. Stat. § 101.65. We are satisfied that the Town had authority under § 101.65 to contract with Maney-Miller for the performance of inspections.

■

¶ 12. The second question is whether the inspectors are employees of the Town or independent contractors. In *Snider v. Northern States Power Co.*, 81 Wis. 2d 224, 232, 260 N.W.2d 260 (1977), our supreme court stated that the most important single factor in answering this question is the degree to which the owner retained control over the details of the work. The general rule is that an owner of a project under construction is not ordinarily liable for the negligence of an independent contractor. *Id.* at 228. In *Snider*, Northern States Power was the owner of a nuclear generating plant which was under construction. *Id.* Snider was a journeyman electrician employed by L.K. Comstock Co., a contractor employed by Northern States Power to do the electrical work. *Id.* Snider was injured on the job. *Id.* at 230. Snider contended that Northern States Power retained control and supervision of the construction and, therefore, its duty to an injured party was the same as that of the independent contractor in respect to failure to properly control and supervise. *Id.* at 228.

¶ 13. The supreme court disagreed with Snider and held that L.K. Comstock was an independent contractor. *Id.* at 232. Its decision was based on these facts: Northern States Power did not attempt to supervise or control the work carried out by L.K. Comstock; Northern States Power's inspector's only concern was to determine that the completed work conformed with the contract specifications; Northern States Power

did not attempt to retain a right to control the details of the work; and Northern States Power did not attempt to exercise detailed supervision. *Id.*

¶ 14. This is a *Snider* case. Like Northern States Power, the Town did not attempt to exercise detailed supervision over the work. And like L.K. Comstock, Maney-Miller retained control over the details of the work. Maney-Miller was a partnership that had contracts with several municipalities. Since 1995, the Town has contracted with Maney-Miller to perform all building inspection services on behalf of the Town. Maney-Miller maintained its office in Delafield, but had limited office hours in the Town's town hall. All partners of Maney-Miller were provided the tools of the trade by the partnership rather than by the Town. Maney-Miller, not the Town, controlled its employees' or partners' physical conduct and actions in performing building inspections on behalf of the Town, and no Town official accompanied the representatives of Maney-Miller to their on-site building inspections. In fact, no Town official has any input into or control over the decisions of Maney-Miller representatives during building inspections. All partners are paid from the income of the partnership. The Town requires Maney-Miller to have insurance for the services that it provides on behalf of the Town and the Town has never provided insurance to Maney-Miller. Under the *Snider* test, Maney-Miller and Poetzl are independent contractors. Therefore, the Town is not liable for the negligence of Maney-Miller. *See id.* at 228.

¶ 15. We add this observation. On appeal, Maney-Miller and Poetzl at times defend portions of the circuit court's ruling (i.e., as to the independent contractor

915

question), but at other times argue for immunity, which would mean they would want to reverse the circuit court's ruling as to them. Maney-Miller and Poetzl are not appellants in this case. They are respondents and to the extent they seek reversal of the circuit court's ruling that they are not entitled to immunity as independent contractors of the Town, they were required to file a cross-appeal under WIS. STAT. Rule 809.10(2)(b). Therefore, we will not address Maney-Miller and Poetzl's arguments that seek reversal or modification of the circuit court's order. However, if Maney-Miller and Poetzl renew their arguments in the circuit court, they may well be entitled to immunity under *Estate of Lyons v. CNA Insurance Cos.*, 207 Wis. 2d 446, 558 N.W.2d 658 (Ct. App. 1996), where this court extended governmental immunity to private persons including independent contractors who contract with municipal authorities.[2]

*By the Court.*—Order reversed.

[2] We need not address the other issues in this case because of our threshold reversal in favor of the Town. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).