OPINION
{¶ 1} This is an appeal of a summary judgment ruling by the Court of Common Pleas of Stark County.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The facts underlying this appeal are that Appellee, Shawn Steele, was injured in an auto-truck collision of October 7, 2003 in Ashland County.
 {¶ 3} Suit was filed in Stark County involving certain road construction and trucking companies and cross claims were filed. We are not, however, concerned with the question of venue.
 {¶ 4} At the time of the accident, Appellee's mother, because of her employment, was covered by a medical payment agreement with Appellant Aultcare under a family plan.
 {¶ 5} Pursuant to such plan, Appellant paid $239,199.91 of Appellee's medical expenses.
 {¶ 6} American Family Insurance also paid certain medical bills but is not involved in this appeal.
 {¶ 7} Appellees Shelley and Sands, Inc. and Mansfield Asphalt Paving Co. have filed a brief in support of the position of Appellee, Shawn Steele.
 {¶ 8} Appellant was joined in the action by way of requesting a declaratory judgment as to the enforceability of its agreement with respect to subrogation or reimbursement. Appellant claimed the right of subrogation in its cross claims.
 {¶ 9} While several Civil Rule 56 motions were pending, the liability claims as to the various trucking and road construction companies were settled through mediation, but not the subrogation issues.
 {¶ 10} The settlement funds as to Appellant's claim are retained in escrow.
 {¶ 11} Appellee's motion to dismiss Appellant's subrogation claim was based upon the argument that Appellant's contract was covered by the Federal Employees Retirement Income Security Act of 1974 (ERISA) and was pre-empted by the provisions thereof.
 {¶ 12} The trial court accepted Appellee's propositions of law in this regard.
 {¶ 13} The sole Assignment of Error is
 ASSIGNMENT OF ERROR {¶ 14} "I. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION TO DISMISS THE SUBROGATION CLAIM OF DEFENDANT/APPELLANT, AULTCARE CORPORATION."
 I. {¶ 15} As stated, the motion filed by Appellee, Steele, was predicated on a lack of subject matter jurisdiction pursuant to Civ. R. 12(H)(3) which provides:
 {¶ 16} "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction on the subject matter, the court shall dismiss the action."
 {¶ 17} The trial court's standard of review regarding a claimed lack of subject matter jurisdiction "is whether any cause of action cognizable by the forum has been raised in the complaint." State ex rel. Bush v. Spurlock (1989),42 Ohio St.3d 77, 80, 537 N.E. 2d 641 (citations omitted). When determining its subject matter jurisdiction, "the trial court is not confined to the allegations of the complaint." SouthgateDev. Corp. v. Columbia Gas Transm. Corp. (1976),48 Ohio St.2d 211, 358 N.E.2d 526, paragraph one of the syllabus. The trial court can consider material beyond the complaint "without converting the motion into one for summary judgment." Id. See also Robinson v. ATT Network Systems (2002), Franklin App. No. 01AP-817, Campbell v. Johnson (1999), Franklin App. No. 99AP0483, Howard v. Supreme Court of Ohio, 10th Dist. Nos. 04AP-1093 and 04AP-1272, 2005-Ohio-2130.
 {¶ 18} In effect, such Appellee stated that due to the provisions of ERISA, Federal pre-emption prevented the trial court from addressing the claim of subrogation of Appellant.
 {¶ 19} The trial court, in addition, granted a Civ.R. 56 motion of American Family Insurance Group (AFIG), but this ruling is not involved in this appeal.
 {¶ 20} There are several questions involved in the Assignment of Error.
 {¶ 21} 29 U.S.C.A. § 1002(1) states:
 {¶ 22} "The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)."
 {¶ 23} The first issue that needs to be addressed prior to a review as to subject matter jurisdiction is whether the medical payment agreement of Appellant under which Appellee's bills were paid is subject to ERISA provisions. While Appellant has devoted most of the arguments in its brief to ERISA, this has been raised, citing lack of proof thereof.
 {¶ 24} The second is whether there is Federal pre-emption due to ERISA and whether a remedy exists under State law. If State law is pre-empted, then only the Federal courts offer jurisdiction. We are not required to determine if a remedy under ERISA exists which a Federal court could address.
 {¶ 25} Before proceeding to the determination as to whether ERISA pre-empts in this case, we need to review certain cases cited and positions made by the parties to this appeal.
 {¶ 26} In citing Nationwide Mutual Ins. Co. v. Zimmerman,Adm., (Dec. 27, 2004), Stark App. No. 2004CA00007,2004-Ohio-7115, a case in which the judges of the Ninth District were assigned to this court, Appellant states (App. Brief at 21) that the holding was to the effect that the right of subrogation arises out of tort rather than contract.
 {¶ 27} This is not exactly correct.
 {¶ 28} While it is correct to say that a subrogee stands in the shoes of the person injured due to the actions of a tortfeasor and the right of such subrogee for reimbursement from such third party is one premised in tort, it is incorrect to exclude the contractual provisions entitling a subrogee to its subrogation claim. Unless a statute confers the right of subrogation, then such must be created by contract or implied in law or equity. If neither a statute nor implication nor contractual provisions, such as assignment, exist, then the right to acquire a portion of the tort claim does not provide subrogation rights, even if a payment of some type were paid.
 {¶ 29} Next, there is some attempt to differentiate "subrogation" and "reimbursement".
 {¶ 30} In a holding in the Common Pleas Court of Tuscarawas County, Freed v. Dayton, Case No. 2005CT010038, cited by Appellant, such Court based its jurisdictional ruling on the difference in such legal terms.
 {¶ 31} However, the issue raised in such case by Aultcare, the Appellant herein, was, in the alternative, to the effect that because ERISA pre-empts State law then the tort claim of the plaintiffs in such case would also be subject only to Federal jurisdiction due to the relationship with 29 U.S.C.A. § 1002, et seq.
 {¶ 32} We believe the issue of pre-emption of a tort claim and the extent of relationship with ERISA differs significantly from the question of pre-emption under review in the case sub judice but we are not required herein to issue an advisory opinion thereon.
 {¶ 33} Such judgment was not appealed to this court.
 {¶ 34} Several courts have discussed the conceptual differences between such terms.
 {¶ 35} In Ward v. Wal-Mart Stores, Inc. (Sept. 30, 1999), 194 F.3d 1315, 6th Cir. (Mich.), Case Nos. 98-1285, 98-1346, the court found subrogation lacking but reimbursement available due to another contractual provision.
 {¶ 36} As shown in footnote 2, the court held:
 {¶ 37} "FN2. The district court found that subrogation was not appropriate because the Plan limited subrogation to recoveries from "any third party who may be liable for the amount of such benefits." Because the City of Lansing was not liable for medical expenses under Michigan law, it did not meet the Plan's definition of a "third party who may be liable for benefits"; thus, there was no right of subrogation. Reimbursement, on the other hand, was available because the Plan provided that it had the right to recover benefits paid from a judgment or settlement "regardless of whether the payment is designated as payment for such damages including, but not limited, to pain and/or suffering, loss of income, medical benefits or any other specified damages; or any other damages. . . ."
 {¶ 38} Again, the Sixth Federal Circuit Court in Marshall v.Employers Health Insurance Co., (Dec. 30, 1997), Sixth Circuit (Tenn.), Case Nos. 96-6063, 96-6112, stated:
 {¶ 39} "Appellants claim that the make-whole rule should necessarily apply to the reimbursement clause in this case because "the concepts of subrogation and reimbursement are so intertwined as to have no practical difference." However, there is a significant difference between subrogation and reimbursement. "While subrogation and reimbursement may have similar effects, they are distinct doctrines." Unisys MedicalPlan v. Timms, 98 F.3d 971, 973 (7th Cir. 1996). "Unlike subrogation, which arises under state law and allows the insurer to stand in the shoes of its insured, reimbursement is a contractual right governed by ERISA and comes into play only after a plan member has received personal injury compensation."Id.; Provident Life and Accident In. Co. v. Williams,858 F.Supp. 907, 911 (W.D.Ark. 1994) ("While subrogation and reimbursement are similar in their effect, they are different doctrines. With subrogation, the insurer stands in the shoes of the insured. With reimbursement, the insurer has a direct right of repayment against the insured. As a matter of logic and case law, a party can have one right, but not the other."). Because subrogation and reimbursement are distinct doctrines, it is possible to find a subrogation clause in a plan to be ambiguous and a reimbursement clause to be unambiguous. Consequently, the make-whole rule may be applied to one provision and not the other."
 {¶ 40} These concepts are still subject to the review of pre-emption.
 {¶ 41} Footnote 3 in Bennett, et al. v. Bank of America, NA,et al., (Feb. 13, 2003), Cuyahoga App. No. 81490, stated it succinctly:
 {¶ 42} "[FN3] The United States Supreme Court has held that Congress' intent in enacting ERISA was to completely preempt that area of employee benefit plans and to make regulation of benefit plans solely a federal concern. Pilot Life, 481 U.S. at 41. Moreover, the 6th Circuit has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA. See, e.g., Ruble v. UNUM Life Ins.Co. (6th Cir., 1990), 913 F.2d 295; Davis v. Kentucky FinanceCos. Retirement Plan (6th Cir., 1989), 887 F.2d 689, cert. denied, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990);McMahan v. New England Mut. Life Ins. Co. (6th Cir., 1989),888 F.2d 426."
 {¶ 43} Imposed upon these considerations was the case ofGreat-West Life Annuity Insurance Company v. Knudson, (2002)534 U.S. 204.
 {¶ 44} In Great-West, supra, such insurance company sought restitution, specific performance of the contractual terms and an injunction to prevent disbursement of settlement funds as to which it claimed the right of subrogation due to the payment of $411,157.11 in medical bills. The trial court had allocated only $13,828.70 toward such subrogation claim.
 {¶ 45} The Federal court to which Great-West, supra, attempted removal denied injunctive relief and no appeal was taken from such denial.
 {¶ 46} The United States Supreme Court held that ERISA § 502(a)(3) did not authorize equitable actions such as those sought when it stated: Section 502(a)(3) authorized a civil action:
 {¶ 47} "`by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan.' 29 U.S.C. § 1132(a)(3) (1994 ed.).
 {¶ 48} "As we explained in Mertens, `"[e]quitable" relief must mean something less than all relief.' Thus, in Mertens
we rejected a reading of the statute that would extend the relief obtainable under § 502(a)(3) to whatever relief a court of equity is empowered to provide in the particular case at issue (which could include legal remedies that would otherwise be beyond the scope of the equity court's authority). Such a reading, we said, would `limit the relief not at all' and `render the modifier ["equitable"] superfluous.' Id., at 257-258, 113 S.Ct. 2063. Instead, we held that the term `equitable relief' in § 502(a)(3) must refer to `those categories of relief that were typically
available in equity. . . .' Id., at 256, 113 S.Ct. 2063.
 {¶ 49} "Here, petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money-relief that was not typically available in equity. `A claim for money due and owing under a contract is "quintessentially an action at law."` Wal-Mart Stores, Inc. v.Wells, 213 F.3d 398, 401 (C.A.7 2000) (Posner, J.). `Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.' Bowen v. Massachusetts, 487 U.S. 879, 918-919,108 S.Ct. 2722, 101 L.Ed.2d 49 (1988) (SCALIA, J., dissenting). And `[m]oney damages are, of course, the classic form of legal
relief.' Mertens, supra, at 255, 113 S.Ct. 2063."
 {¶ 50} The court did say however:
 {¶ 51} "We note, though it is not necessary to our decision, that there may have been other means for petitioners to obtain the essentially legal relief that they seek. We express no opinion as to whether petitioners could have intervened in the state-court tort action brought by respondents or whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would have been pre-empted by ERISA. Nor do we decide whether petitioners could have obtained equitable relief against respondents' attorney and the trustee of the Special Needs Trust, since petitioners did not appeal the District Court's denial of their motion to amend their complaint to add these individuals as codefendants."
 {¶ 52} This is merely dicta as the court was not addressing such question but such statement has caused debate and concern to the lower Federal courts in subsequent cases.
 {¶ 53} In effect, this case, in reviewing29 U.S.C.A. § 1144(a), stands for the proposition that historic equity remedies are not generally available under ERISA and that questions of law, if available, are subject to action in the Federal District Courts.
 {¶ 54} Such section states:
 {¶ 55} "Supersedure; effective date
 {¶ 56} "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975."
 {¶ 57} An examination of the contents of Appellant's plan which was before the court clearly shows that this plan falls within the purview of the ERISA regulations in addition to the reservation by Appellant to interpret pursuant to such.
 {¶ 58} Because the complete details of the plan, by motion, were before the court, sufficient proof was offered to apprise the court on the question of subject matter jurisdiction.
 {¶ 59} In conclusion, we determine that the contractual right of subrogation which may entitle Appellant to reimbursement of funds utilized for the medical bills of Appellee, arose entirely out of an employer-employee ERISA plan and is pre-empted by such Federal statutes.
 {¶ 60} We note that the Judgment Entry sustaining Appellee's Motion to dismiss was "with prejudice". As the court lacked subject matter jurisdiction its authority would be limited under Civ.R. 12(H)(3) to a dismissal without adding such language preventing further legal action if such may be available in Federal court.
 {¶ 61} We therefore affirm the trial court's Judgment of dismissal but modify such Entry to delete the language of "with prejudice".
Boggins, J. Gwin, P.J., concurs.
Farmer, J. dissents.